**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ATLAS IP, LLC, <br><br>      Plaintiff, <br><br>v. <br><br>MASTER METER, INC. <br><br>      Defendant. | Civil Action No.: _____ <br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas IP, LLC ("Atlas") brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 5,371,734 ("the '731 Patent") against Defendant Master Meter, Inc ("Defendant") as follows:

## NATURE OF ACTION

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2. Atlas IP, LLC is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at One SE Third Avenue, Suite 200, Miami, Florida 33131.

3. Defendant is a corporation organized and existing under the laws of the State of Texas, having a principal place of business at 101 Regency Parkway, Mansfield, Texas 76063. Defendant maintains a registered agent in Texas at the following address: Jerald A. Potter, 101 Regency Parkway, Mansfield, Texas 76063.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a)

5. Upon information and belief, this Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the Eastern District of Texas giving rise to this action and has established sufficient minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Personal jurisdiction also exists specifically over Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets one or more products and/or services within the State of Texas, and more particularly, within the Eastern District of Texas, that infringe the patent-in-suit, as described more particularly below.

6. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b) insofar as Defendant has, among other things, committed acts of patent infringement in this District.

## BACKGROUND

7. Atlas is the owner by assignment of U.S. Patent Nos. 5,371,734 ("the '734 patent") entitled, *Medium Access Control Protocol for Wireless Network*, the application for which was filed in January 1993. (Exhibit A)

8. The invention of the '734 patent is directed, *inter alia*, to "a reliable medium access control (MAC) protocol for wireless, preferably radio frequency (RF), LAN-type network communications among a plurality of resources…." '734 patent, col. 5, lines 10-14.

9. Representative claim 1 of the '734 patent reads:

A communicator for wirelessly transmitting frames to and receiving frames from at least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect predetermined functions comprising:

designating one of the communicators of the Group as a hub and the remaining the communicators of the Group as remotes;

the hub establishing repeating communication cycles, each communication cycle having intervals during which the hub and the remotes transmit and receive frames;

the hub transmitting cycle establishing information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub, and when each remote is expected to receive a frame from the hub;

the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the communication cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive;

the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the cycle establishing information transmitted from the hub; and

the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the cycle establishing information transmitted from the hub.

10. Defendant infringes the '734 through, for example, its use of 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster and 3G equipped meters, XTR, MMR, EMMR and DMMR and other AMR/AMI products. The term "AMR/AMI"

generally includes as nodes or meters, water, gas and electric, which record utility usage and allows for communication between the meters and the utility company.

11. Prior to January 2013, Defendant installed among its customer base FixedLinx network of 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster form a backbone of a communication network that collects data from 3G meters or adapters like the XTR and passes that data from utility meters to the 3G FixedLinx Concentrator and to the MasterLinx Data Center. Such meters, Dialog 3G Register System, Universal Dialog 3G, 3G Dialog Interpreter, XTR, MMR, EMMR, DMMR and 3G Gas PWR modules and RepReader and IP Remote Reader, among others (hereinafter nodes), send messages at predetermined intervals over a wide area network ("WAN") using Master Meter's communication protocol. The nodes may also be queried on an ad hoc basis and programmed.

12. The communication between the meters or adapters and 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster over the WAN occurs over the licensed 902-928 MHz band.

13. The nodes and 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster communicate over the WAN ("Accused Products") and are designed to form a communication group. Additional communications can occur via cellular relays and between 3G Boosters and 3G Mobile Drive By computer, 3G FixedLinx Repeater collector.

14. The Accused Products each include a transceiver consisting of a transmitter and receiver that transmits and receives packets of data.

15. The Accused Products operate to transmit and receive information about customer water, gas or electricity usage.

16. The Accused Products form a group of at least one device operating in remote mode (eg 3G Interpreter), and one device operating in base mode (3G Booster or 3G Repeater for example). For example, in a FixedLinx network, a 3G Booster interrogates nearby 3G meters. The 3G Booster reports data to FixedLinx Repeaters and the FixedLink Repeaters forwards that data to the utility.

17. The 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster transmits at least one frame of data to a the nodes to request data that initiates a communication session, and which allows the nodes to calculate the duration of the communication session and its constituent intervals before the nodes transmit to the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster during the communication session.

18. During the communication session, the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster and the nodes will transmit and receive packets of data to and from one another consisting of an interrogation message from the hub to the nodes, and utility usage and machine state data from the node to the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster.

19. During the transmission period, the node expects to receive a packet of data, which come in the form of a query.

20. During the reception period, the node sends packets of data to the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster including utility usage and machine state data.

21. The 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster establishes communication cycles with the nodes that repeats (*e.g.,* hourly).

During each such communication cycle, there are intervals during which the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster and the node transmit and receive frames. For example, as depicted in Figure 3 of the '734 patent below, the read request and power status check request messages are frames. These frames contain information establishing the communication cycle, including the interval in which a read request or power status check request message is sent from the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster to the node (i.e., the outbound portion of the communication cycle), and the interval in which a read message or power status message is sent from the node to the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster (i.e., the inbound portion of the communication cycle).



22. The 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster determines whether to power off its receiver during times other than those when it is receiving data during a communication session. Likewise, the nodes determine

whether to power off its transmitter during times other than those when it is transmitting data during a communication session. For example, the nodes can communicate with the access point using half-duplex radio frequency communications. In half-duplex communications, the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster power down the receiver circuitry of the radio transceiver during the interval of the communication cycle in which it is transmitting the read and power status check request messages. Once the node has transmitted data packets to the 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster, if its receiver has been powered down, it activates its receiver to await the reception of data from the base.

23. A chart showing that the Accused Products literally satisfy each limitation of claim 1 of the '734 patent is attached hereto as Exhibit B.

## Count I – Infringement of the '734 Patent

24. Atlas hereby incorporates by reference paragraphs 1-23.

25. Defendant's 3G Mobile Drive By computer, 3G FixedLinx Repeater collector and/or 3G FixedLinx Booster and nodes described herein directly infringed the claims of the '734 patent before the expiration thereof, including but not limited to, representative claim 1 above.

26. Defendant is liable for infringement of one or more claims of the '734 patent pursuant to 35 U.S.C. § 271, either literally or under the Doctrine of Equivalents.

27. As a result of Defendant's wrongful conduct, Atlas has been damaged in an amount to be determined at trial, but in no case less than a reasonable royalty.

28. Atlas has not made or sold, or had made or sold for it, any product covered by the claims of the '734. Of Atlas's predecessors in interest in the ownership of the '734 patent, only

Digital Ocean Inc. made or sold, or had made or sold, products covered by the claims of the '734 patent. Digital Ocean marked all such products with the '734 patent number.

## REQUEST FOR JURY TRIAL

29. Atlas requests a jury trial on all issues for which a jury trial is permissible.

## PRAYER

WHEREFORE, Atlas respectfully requests that this Court enter the following prayer for relief:

A. A judgment in favor of Plaintiff Atlas IP, that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '734 patent;

B. An award of damages resulting from Defendant's acts of infringement in accordance with 35 U.S.C. § 284;

C. A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Atlas including, without limitation, prejudgment and post-judgment interest; and

D. Any and all other relief to which Atlas may show itself to be entitled.

Dated: October 6, 2016.  Respectfully submitted,

_/s/ Deron R. Dacus_____
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
Shannon Dacus
Texas Bar No. 00791004
sdacus@dacusfirm.com
Peter A. Kerr
Texas Bar No. 24076478
pkerr@dacusfirm.com
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
(903) 705-1117 Telephone
(903) 581-2543 Facsimile

*Attorneys for Plaintiff Atlas IP, LLC*